IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| KELLY HARTNETT and CHERRY HARTNETT, | § § § § | |
|---|---|---|
| Plaintiffs, | § § | |
| v. | § § § | CASE NO. _____ |
| ROY A. SCIACCA, | § § | 08-60555-CIV-JORDAN/MCALILEY |
| Defendant. | § § § § | |

FILED by VK D.C.
ELECTRONIC

APR. 18, 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## COMPLAINT

Plaintiffs Kelly Hartnett ("Mr. Hartnett") and Cherry Hartnett ("Mrs. Hartnett") (collectively, "Plaintiffs"), by and through their undersigned counsel, file this their original Complaint against Defendant Roy A. Sciacca ("Sciacca") and, in support thereof, show the matters set forth below.

### I. SUMMARY

1. Plaintiffs loaned $200,000.00 (the "Loan") to Creative Licensing, Inc. ("Creative Licensing"), an alter ego of Sciacca, in reliance on Sciacca's representations regarding a series of international concert events to be called "Powerfest," the least of which was that Powerfest would actually occur. Sciacca signed a Promissory Note on behalf of Creative Licensing memorializing the Loan and his agreement to repay the principal, plus interest, by no later than September 30, 2003. Despite the numerous representations Sciacca made to Plaintiffs to procure the Loan, none of the Powerfest events ever took place and Creative Licensing did not repay the Loan by the September 30, 2003 deadline. Subsequently, Sciacca made several written and verbal promises to personally repay the principal amount in consideration of Plaintiffs' agreement to not instituting legal proceedings against Sciacca and Creative Licensing and extend

COMPLAINT – Page 1 of 11
MI-265718 v1 0950000-00102

the timeframe to pay. Nevertheless, Sciacca has not repaid any of the principal or interest to Plaintiffs. Plaintiffs understand Sciacca has similarly not repaid other investors in the Powerfest project.

2. Creative Licensing's failure to repay Plaintiffs is a clear default of the loan agreement memorialized by the Promissory Note, under which Plaintiffs are owed over $390,000.00 in principal and interest. Sciacca is personally liable for these amounts, because he was the alter ego of Creative Licensing, and for the principal, which he personally agreed to pay. Sciacca is also liable for the fraudulent representations made to Plaintiffs in order to procure and extend repayment of the Loan.

## II. THE PARTIES

3. Plaintiff Kelly Hartnett is a citizen of the State of New Jersey and resides at 8 Mackenzie Lane North, Denville, New Jersey 07834.

4. Plaintiff Cherry Hartnett is a citizen of the State of New Jersey and resides at 8 Mackenzie Lane North, Denville, New Jersey 07834.

5. Defendant Sciacca is a resident of Broward County, Florida. Upon information and belief, he may be served with process at his residence at 1349 SE 5th Court, Deerfield Beach, Florida 33441, or anywhere else where he may be found.

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiffs have suffered over $75,000.00 in damages because of Sciacca's actions and there is a complete diversity of parties.

7. Venue is appropriate in this district under 28 U.S.C. § 1391(b).

MI-265718 v1 0950000-00102

2 of 19

the timeframe to pay. Nevertheless, Sciacca has not repaid any of the principal or interest to Plaintiffs. Plaintiffs understand Sciacca has similarly not repaid other investors in the Powerfest project.

2. Creative Licensing's failure to repay Plaintiffs is a clear default of the loan agreement memorialized by the Promissory Note, under which Plaintiffs are owed over $390,000.00 in principal and interest. Sciacca is personally liable for these amounts, because he was the alter ego of Creative Licensing, and for the principal, which he personally agreed to pay. Sciacca is also liable for the fraudulent representations made to Plaintiffs in order to procure and extend repayment of the Loan.

## II. THE PARTIES

3. Plaintiff Kelly Hartnett is a citizen of the State of New Jersey and resides at 8 Mackenzie Lane North, Denville, New Jersey 07834.

4. Plaintiff Cherry Hartnett is a citizen of the State of New Jersey and resides at 8 Mackenzie Lane North, Denville, New Jersey 07834.

5. Defendant Sciacca is a resident of Broward County, Florida. Upon information and belief, he may be served with process at his residence at 1349 SE 5th Court, Deerfield Beach, Florida 33441, or anywhere else where he may be found.

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiffs have suffered over $75,000.00 in damages because of Sciacca's actions and there is a complete diversity of parties.

7. Venue is appropriate in this district under 28 U.S.C. § 1391(b).

MI-265718 v1 0950000-00102

2 of 19

## IV. **FACTUAL BACKGROUND**

8.    In or about January 2003, Creative Licensing set out to procure funds to purportedly finance a proposed series of international car racing and concert events to be called "Powerfest." To that end, Sciacca solicited funds from Plaintiffs, who were residents of Pennsylvania at the time and until August 2007. Sciacca also solicited funds from other investors across the Unites States.

9.    According to Sciacca, Powerfest was to be "a series of five weekend-long festivals that blend the best in music, motor sports, and entertainment" that was to debut in Berlin, Germany on June 20, 2003. Sciacca told Plaintiffs and other potential investors the debut was to be followed by consecutive weekends in Budapest, Hungary, Vienna, Austria, and Modena, Italy, before finishing in Barcelona, Spain on July 20, 2003. Sciacca told Plaintiffs and other potential investors that projected revenue from ticket sales, television rights, sponsorships, advertising and merchandising was $42,977,500.00, which would, Sciacca claimed, net $16,303,525.00 in profit. *See* **Exhibit A**, attached hereto and incorporated by reference.

10.   Plaintiffs loaned $200,000.00 to Creative Licensing in reliance on Sciacca's projected revenue figures and other statements regarding the proposed project. Of the Loan amount, $75,000.00 was received by Creative Licensing in the last half of 2002 and $125,000.00 was received by Creative Licensing in the first quarter of 2003 (with $25,000.00 of this total being retained by a third party as a finder's fee).

11.   On or about February 28, 2003, Sciacca signed a Promissory Note on behalf of Creative Licensing memorializing the Loan and his agreement to pay Plaintiffs the principal, plus interest, by no later than September 30, 2003. *See* Promissory Note, attached hereto as

**Exhibit B** and incorporated by reference. The Promissory Note states that it is to be "construed, governed and enforced in accordance with the laws of the State of Nevada."

12. Despite the numerous representations Sciacca made to procure the Loan, none of the Powerfest events ever took place, and Creative Licensing did not repay the Loan by the September 30, 2003 deadline.

13. Subsequently, Sciacca made several written and verbal promises to personally repay the principal amount in consideration of Plaintiffs' forbearance in not instituting legal proceedings against Sciacca and Creative Licensing and extending the timeframe to pay (the "Sciacca Agreement"). Sciacca even went so far as to state that he would provide a personal guarantee in writing.

14. More specifically, in a February 17, 2004 e-mail to Mr. Hartnett, Sciacca claimed that he had "never been late on a return," personally assured Mr. Hartnett that he "will receive every dollar that is owed" and agreed to "work out an additional return for the late fee."

15. In or about February 2005, Sciacca sent a letter to Mr. Hartnett claiming that he had kicked off a similar series of domestic concert events called "Velocity Tour," the revenue from which would allow him to repay the Loan. Sciacca stated he would be able "to payout the entire note within the next six weeks." He further stated that an initial payment of $50,000.00 would be made to Mr. Hartnett the week of February 16, 2005, with the "payment schedule following the first $50,000.00 . . . to be forwarded within a week after the first payment."

16. On October 11, 2006, Sciacca stated in an e-mail to Mr. Hartnett that Sciacca "will have all completed and funds back to you in the month of November." Two days later, in an e-mail to Mr. Hartnett, Sciacca acknowledged his previous unfulfilled promises, stating that he would "not promise another thing he cannot deliver."

17. On or about November 6, 2006, Sciacca again promised that there would be a significant payout to Plaintiffs and the other investors in November 2006, that Plaintiffs were "#1 on the list" for repayment of at least $175,000.00 of the principal amount and that Plaintiffs would not be out any of the principal investment amount.

18. Nevertheless, as the promised repayment date neared, Sciacca became increasingly difficult to reach. To this date, he has not repaid *any* of the principal or interest to Plaintiffs or, upon information and belief, the other investors in the Powerfest project.

19. Sciacca and Creative Licensing's failure to repay Plaintiffs is a clear default of the loan agreement memorialized by the Promissory Note, under which Plaintiffs are owed over $405,000.00 [*i.e.*, $200,000.00 principal, $100,000.00 interest (due September 30, 2003), prejudgment interest compounded from September 30, 2003 to the present (over $90,000.00 at 6%)], plus attorneys' fees and costs of collection. Sciacca is personally liable for these amounts because he was the alter ego of Creative Licensing, and for the principal because he personally agreed to pay such amounts. Sciacca is also liable for the fraudulent representations made to Plaintiffs in order to procure and extend repayment of the Loan.

20. Plaintiffs have also been in contact with three investors in the "Velocity Tour," of which Sciacca had spoken in his February 2005 letter. Plaintiffs were informed that two of these investors made loans to Creative Licensing under similar circumstances as Plaintiffs. The third investor made a loan to Gem Systems, Inc., another entity controlled by Sciacca as its President, under similar terms and conditions as those of the Loan. Similar to Plaintiffs' situation, the loan repayment dates for each of these loans are long past and, after many false promises, Sciacca has yet to repay the loans.

## V. **CHOICE OF LAW**

21.   The law of the State of Florida applies to Counts I, II, III and IV because Florida is the state with the most significant relationship to Plaintiffs' tort claims.

22.   The law of the State of Nevada applies to Count III because the Promissory Note, by its terms, is to be construed, governed and enforced in accordance with the laws of the State of Nevada.

23.   The law of the Commonwealth of Pennsylvania applies to Count V because the last act necessary to constitute acceptance of the Sciacca Agreement, i.e. communication of acceptance to Sciacca, was performed by Kelly Hartnett in Pennsylvania.

## VI. **CAUSES OF ACTION**

### COUNT I – FRAUD

24.   Plaintiffs incorporate by reference the allegations of all preceding paragraphs as if fully set forth herein.

25.   Sciacca made false and material representations to Plaintiffs including, but not limited to, the following:  (a) that Sciacca, acting on behalf of Creative Licensing, intended to promote Powerfest;  (b) that Powerfest would actually occur;  (c) that expected revenue from ticket sales, television rights, sponsorships, advertising and merchandising for Powerfest was $42,977,500.00, which would, Sciacca claimed, net $16,303,525.00 in profit;  (d) that the information contained in the materials attached as Exhibit A was true and correct at the time it was communicated to Plaintiffs;  (e) that Plaintiffs would "receive every dollar that is owed" and an additional return would be worked out for the late fee;  (f) that an initial payment of $50,000.00 would be made to Mr. Hartnett the week of February 16, 2005, with the remainder of the loan being paid off within six weeks; and (g) that Sciacca would repay all principal under the Loan to Plaintiffs in November 2006.

26. At the time Sciacca made such representations, Sciacca knew the representations were false and/or made the representations recklessly, as a positive assertion, and without knowledge of its truth.

27. Sciacca made such representations with the intent that Plaintiffs act on them.

28. Plaintiffs justifiably relied on the representations of Sciacca.

29. Sciacca's tortious conduct is a direct and proximate cause of damages to Plaintiffs.

30. Plaintiffs are further entitled to punitive damages pursuant to Florida Statutes § 768.72, because Sciacca is personally guilty of intentional misconduct or gross negligence.

## COUNT II – NEGLIGENT MISREPRESENTATION

31. Plaintiffs incorporate by reference the allegations of all preceding paragraphs as if fully set forth herein.

32. Sciacca made false and material representations to Plaintiffs including, but not limited to, the following: (a) that Sciacca, acting on behalf of Creative Licensing, intended to promote Powerfest; (b) that Powerfest would actually occur; (c) that expected revenue from ticket sales, television rights, sponsorships, advertising and merchandising for Powerfest was $42,977,500.00, which would, Sciacca claimed, net $16,303,525.00 in profit; (d) that the information contained in the materials attached as Exhibit A was true and correct at the time it was communicated to Plaintiffs; (e) that Plaintiffs would "receive every dollar that is owed" and an additional return would be worked out for the late fee; (f) that an initial payment of $50,000.00 would be made to Mr. Hartnett the week of February 16, 2005, with the remainder of the loan being paid off within six weeks; and (g) that Sciacca would repay all principal under the Loan to Plaintiffs in November 2006.

33. Such representations were made under circumstances in which Sciacca ought to have known their falsity.

34. Sciacca made such representations with the intent that Plaintiffs act on them.

35. Plaintiffs justifiably relied on the representations of Sciacca.

36. Sciacca's tortious conduct is a direct and proximate cause of damages to Plaintiffs.

37. Plaintiffs are further entitled to punitive damages pursuant to Florida Statutes § 768.72, because Sciacca is personally guilty of intentional misconduct or gross negligence.

## COUNT III – BREACH OF CONTRACT – PROMISSORY NOTE

38. Plaintiffs incorporate by reference the allegations of all preceding paragraphs as if fully set forth herein.

39. The Promissory Note is a valid, enforceable contract that existed between Creative Licensing, which was operated by Sciacca as an alter ego, and Plaintiffs.

40. All conditions precedent to the Promissory Note have been performed by Plaintiffs.

41. Plaintiffs performed and/or tendered performance under the Promissory Note.

42. Sciacca, through his alter ego, Creative Licensing, breached the Promissory Note by failing to repay Plaintiffs any of the principal and interest due under the Promissory Note on or before September 30, 2003.

43. Plaintiffs suffered damages as a result of Sciacca / Creative Licensing's breach.

44. Pursuant to the express provisions of the Promissory Note, Plaintiffs are entitled to recover all reasonable attorneys' fees and costs of collection.

## COUNT IV – ALTER EGO

45. Plaintiffs incorporate by reference the allegations of all preceding paragraphs as if fully set forth herein.

46. Creative Licensing was controlled, influenced and governed by Sciacca.

47. Sciacca used the corporate form of Creative Licensing as a sham to perpetrate a fraud.

48. There was such a unity of interest and ownership between Creative Licensing and Sciacca that one was inseparable from the other.

49. The facts are such that an adherence to the corporate fiction of Creative Licensing would, under the circumstances, sanction fraud or promote injustice.

50. Sciacca operated Creative Licensing as an alter ego of himself, as a single economic entity and with the overall purpose and effect of injustice and unfairness. In the interest of justice, the nominal separateness of Sciacca and Creative Licensing should be disregarded and Sciacca should be held accountable to Plaintiffs for damages and attorneys' fees resulting from Creative Licensing's breach of the Promissory Note. *See, supra*, Count II.

## COUNT V – BREACH OF CONTRACT – SCIACCA AGREEMENT

51. Plaintiffs incorporate by reference the allegations of all preceding paragraphs as if fully set forth herein.

52. The Sciacca Agreement is a valid, enforceable contract that existed between Sciacca and Plaintiffs.

53. The Sciacca Agreement was entered by Sciacca in consideration of Plaintiffs' forbearance in not instituting legal proceedings against Sciacca or Creative Licensing. The Sciacca Agreement was not one of suretyship, but was a new undertaking supported by

consideration. The main purpose and object of Sciacca in entering into the Sciacca Agreement was to subserve a pecuniary or business purpose of his own, involving a benefit to himself.

54.  All conditions precedent to the Sciacca Agreement have been performed by Plaintiffs.

55.  Plaintiffs performed and/or tendered performance under the Sciacca Agreement.

56.  Sciacca breached the Sciacca Agreement by failing to repay Plaintiffs any of the principal due under the Promissory Note, as promised.

57.  Plaintiffs suffered damages as a result of Sciacca's breach.

## VII. PRAYER

WHEREFORE, Plaintiffs Kelly Hartnett and Cherry Hartnett request that the Court issue judgment in favor of Plaintiffs on all counts, and award them:

   a.  Actual damages;

   b.  Incidental, consequential, exemplary and punitive damages, as permitted by law;

   c.  Pre-judgment and post-judgment interest as provided by law; and

   d.  Attorneys' fees and costs, as permitted by law;

Plaintiffs further pray for any and other relief, at law or in equity, to which they may be justly entitled.

**COMPLAINT** – Page 10 of 11
MI-265718 v1 0950000-00102

Dated: April 18, 2008

Respectfully submitted,

**KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP**

_/s/ Jeffrey T. Kucera_

Jeffrey T. Kucera
Fla. Bar No.: 0068233
Wachovia Financial Center, 20th Floor
200 South Biscayne Boulevard
Miami, Florida 33131-2399
305-539-3300
305-358-7095 - fax

Paul R. Genender
Tex. State Bar No. 00790758
*Pro Hac Vice Motion Pending*
Matthew D. Rinaldi
Tex. State Bar. No. 24033122
*Pro Hac Vice Motion Pending*
1717 Main Street, Suite 2800
Dallas, Texas 75201
214-939-5500
214-939-5849 – fax

**ATTORNEYS FOR PLAINTIFFS KELLY HARTNETT AND CHERRY HARTNETT**



355 N. LANTANA ST. #511 • CAMARILLO, CA 93010

## Projected Income Statement

The following numbers represent projected revenues and expenses for Powerfest 2003;

### REVENUE

**TICKETS**

| | |
|---|---:|
| Weekend VIP Pass - Full Event | $4,200,000 |
| Concert VIP Ticket | 1,700,000 |
| Weekend Pass - Racing Only | 965,000 |
| Single Ticket - Concert (Friday) | 11,875,000 |
| Single Ticket - Concert (Saturday) | 9,387,500 |
| Single Ticket - Race (Saturday) | 1,400,000 |
| Single Ticket - Race (Sunday) | 1,400,000 |
| CreamXtreme - Friday | 525,000 |
| CreamXtreme - Saturday | 525,000 |
| **Sub-Total Ticket Sales** | **$31,977,500** |

**TELEVISION RIGHTS**

| | |
|---|---:|
| European Rights | $1,500,000 |
| European Terrestrial Rights | 1,000,000 |
| Pacific Rim | 1,000,000 |
| Latin America (including Mexico) | 500,000 |
| **Sub-Total Television Rights** | **$4,000,000** |

**SPONSORSHIPS**

| | |
|---|---:|
| "Title" Rights | $1,000,000 |
| "Presented By" Rights: | 3,000,000 |
|    includes "Official" Status | |
|    includes "Pouring" Rights | |
| Local Sponsorships: | 1,500,000 |
|    includes "Brought to You Buy" | |
| **Sub-Total Sponsorships** | **$5,500,000** |

**ADVERTISING**

| | |
|---|---:|
| Signage | $1,000,000 |
| **Sub-Total Advertising** | **$1,000,000** |

**ANCILLARY**

| | |
|---|---:|
| Merchandising | $500,000 |
| **Sub-Total Ancillary** | **$500,000** |

**TOTAL REVENUE**   $42,977,500



EXHIBIT A

*This is a confidential document prepared by management for internal purposes only*



355 N. LANTANA ST. #511 • CAMARILLO, CA 93010

## EXPENSES

**ADVERTISING AND MARKETING**
Advertising Fixed Fee      $1,000,000
Marekting Fixed Fee      $110,000

**PERSONNEL**
Professional      616,000
Administrative      40,000
Shipping      600,000
Logistics      1,000,000
**Sub Total Personnel**      **$2,256,000**

**PRODUCTION**
Concerts:      4,000,000
Races:      1,000,000
**Sub Total Production**      **$5,000,000**

**TRACK RENTAL**
Fixed Fee      582,000
Estimated Percentage      20,000
**Sub Total Track Rental**      **$602,000**

**TALENT**
Concerts      6,200,000
Races      2,500,000
Rider Costs      620,000
**Sub Total Talent**      **$9,320,000**

Insurance      $4,200,000

**TRAVEL AND LODGING**
Hotel      2,010,000
Airfare      225,000
Ground Transportation      90,000
**Sub Total Travel/Lodging**      **$2,325,000**

**Sub-Total of all expenses**      **$24,813,000**

**7.5% Overhead Factor**      **$1,860,975**

**Total Expenses**      **$26,673,975**

## *POWERFEST 2003 NET PROFIT*      **$16,303,525**

*This is a confidential document prepared by management for internal purposes only*



355 N. LANTANA ST. #511 • CAMARILLO, CA 93010

## Projected Expenses by Country

| EXPENSES | USA | GERMANY | HUNGARY | AUSTRIA | ITALY | SPAIN |
|---|---|---|---|---|---|---|
| **ADVERTISING AND MARKETING** | | | | | | |
| Fixed Advertising | | $200,000 | $200,000 | $200,000 | $200,000 | $200,000 |
| Fixed Marketing | | 17,500 | 18,000 | 17,500 | 21,000 | 36,000 |
| **PERSONNEL** | | | | | | |
| Professional | $400,000 | 2,500 | 15,000 | 96,000 | 2,500 | 100,000 |
| Administrative | 40,000 | | | | | |
| Shipping | 600,000 | | | | | |
| Logistics | | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 |
| **PRODUCTION** | | | | | | |
| Concerts: | | 800,000 | 800,000 | 800,000 | 800,000 | 800,000 |
| Races: | | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 |
| **TRACK RENTAL** | | | | | | |
| Fixed Fee | | 200,000 | 16,000 | 66,000 | 150,000 | 150,000 |
| Estimated Percentage | | | | 20,000 | | |
| **TALENT** | | | | | | |
| Concerts | | 1,250,000 | 1,450,000 | 1,250,000 | 1,000,000 | 1,250,000 |
| Races | | 500,000 | 500,000 | 500,000 | 500,000 | 500,000 |
| Rider Costs | | 125,000 | 145,000 | 125,000 | 100,000 | 125,000 |
| Insurance | | 840,000 | 840,000 | 840,000 | 840,000 | 840,000 |
| **TRAVEL AND LODGING** | | | | | | |
| Hotel | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 |
| Airfare | 225,000 | | | | | |
| Ground Transportation | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| **Sub-Total** | $1,615,000 | $4,685,000 | $4,734,000 | $4,664,500 | $4,363,500 | $4,751,000 |
| 7.5% Overhead Factor | $121,125 | $351,375 | $355,050 | $349,838 | $327,263 | $356,325 |
| **Total Expenses** | $1,736,125 | $5,036,375 | $5,089,050 | $5,014,338 | $4,690,763 | $5,107,325 |

This is a confidential document prepared by management for internal purposes only



355 N. LANTANA ST. #511 • CAMARILLO, CA 93010

## Projected Ticket Sales by Country

| TICKETS SALES | GERMANY | HUNGARY | AUSTRIA | ITALY | SPAIN |
|---|---|---|---|---|---|
| **Weekend VIP Pass - Full Event** | | | | | |
| Number of Spectators | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Cost Per Ticket | $500.00 | $500.00 | $500.00 | $650.00 | $650.00 |
| **Concert VIP Ticket** | | | | | |
| Number of Spectators | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Cost Per Ticket | $300.00 | $300.00 | $300.00 | $400.00 | $400.00 |
| **Weekend Pass - Racing Only** | | | | | |
| Number of Spectators | 3,000 | 5,000 | 3,000 | 5,000 | 5,000 |
| Cost Per Ticket | $40.00 | $40.00 | $40.00 | $55.00 | $50.00 |
| **Single Ticket - Concert (Friday)** | | | | | |
| Number of Spectators | 45,000 | 50,000 | 35,000 | 50,000 | 40,000 |
| Cost Per Ticket | $50.00 | $42.50 | $50.00 | $75.00 | $50.00 |
| **Single Ticket - Concert (Saturday)** | | | | | |
| Number of Spectators | 35,000 | 35,000 | 35,000 | 40,000 | 40,000 |
| Cost Per Ticket | $50.00 | $42.50 | $50.00 | $60.00 | $50.00 |
| **Single Ticket - Race (Saturday)** | | | | | |
| Number of Spectators | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Cost Per Ticket | $25.00 | $25.00 | $25.00 | $35.00 | $30.00 |
| **Single Ticket - Race (Sunday)** | | | | | |
| Number of Spectators | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Cost Per Ticket | $25.00 | $25.00 | $25.00 | $35.00 | $30.00 |
| **CreamXtreme - Friday** | | | | | |
| Number of Spectators | 3,000 | 5,000 | 3,000 | 5,000 | 5,000 |
| Cost Per Ticket | $25.00 | $25.00 | $25.00 | $25.00 | $25.00 |
| **CreamXtreme - Saturday** | | | | | |
| Number of Spectators | 3,000 | 5,000 | 3,000 | 5,000 | 5,000 |
| Cost Per Ticket | $25.00 | $25.00 | $25.00 | $25.00 | $25.00 |

*This is a confidential document prepared by management for internal purposes only*



## Projected Net Income by Country

| REVENUES | GERMANY | HUNGARY | AUSTRIA | ITALY | SPAIN |
|---|---|---|---|---|---|
| **TICKETS** | | | | | |
| *Weekend VIP Pass - Full Event* | | | | | |
| *Weekend VIP - Concert Only* | $750,000 | $750,000 | $750,000 | $975,000 | $975,000 |
| *Weekend Pass - Racing Only* | 300,000 | 300,000 | 300,000 | 400,000 | 400,000 |
| *Single Ticket - Concert (Friday)* | 120,000 | 200,000 | 120,000 | 275,000 | 250,000 |
| *Single Ticket - Concert (Saturday)* | 2,250,000 | 2,125,000 | 1,750,000 | 3,750,000 | 2,000,000 |
| *Single Ticket - Race (Saturday)* | 1,750,000 | 1,487,500 | 1,750,000 | 2,400,000 | 2,000,000 |
| *Single Ticket - Race (Sunday)* | 250,000 | 250,000 | 250,000 | 350,000 | 300,000 |
| *CreamXtreme - Friday* | 250,000 | 250,000 | 250,000 | 350,000 | 300,000 |
| *CreamXtreme - Saturday* | 75,000 | 125,000 | 75,000 | 125,000 | 125,000 |
| | 75,000 | 125,000 | 75,000 | 125,000 | 125,000 |
| Total Ticket Sales | $5,820,000 | $5,612,500 | $5,320,000 | $8,750,000 | $6,475,000 |
| **EXPENSES** | | | | | |
| Total Expenses From Above | $5,036,375 | $5,089,050 | $5,014,338 | $4,690,763 | $5,107,325 |
| **PROFIT BY COUNTRY** | $783,625 | $523,450 | $305,663 | $4,059,238 | $1,367,675 |

*[handwritten: $26M]*

*[handwritten: d/N inc. tele., sponsorship, etc.]*

*This is a confidential document prepared by management for internal purposes only*

rep, 28, 03 03:20a    Roy H. Sciacca         9543404312         p.1

## PROMISSORY NOTE

Principal amount $200,000.00              Date: February 2X, 2003.

    FOR VALUE RECEIVED, the undersigned hereby promises to pay to the order of Kelly and Cherry Hartnett (1168 Avonlea Circle, Glen Mills, Pa 19342) the sum of **Two Hundred Thousand Dollars and no cents ($200,000.00)**, together with interest thereon at the flat rate of 50.00%. Said sum shall be paid in the manner following:

1. Principal to be repaid from ticket sales at the rate of $.25 from every $1.00 of revenue.
2. Initial payments addressing principal only will be made *directly* from ticket agencies.
3. Interest payment of $100,000.00 will be made no later than September 30, 2003 directly from company.


(One Hundred, Twenty five Thousand Dollars received in second and third quarter of 2002).

(Seventy Five Thousand Dollars received February 28, 2003).


This note may be prepaid, at any time, in whole or in part, without penalty.

    This note shall at the option of any holder thereof be immediately due and payable upon the occurrence of any of the following:

1. Failure to make any payment due hereunder within fifteen (15) days of its due date.

2. Breach of any condition of any security interest, mortgage, loan agreement, pledge agreement or guarantee granted as collateral security for this note.

3. Breach of any condition of any loan agreement, security agreement or mortgage, if any, having a priority over any loan agreement, security agreement or mortgage on collateral granted, in whole or in part, as collateral security for this note.

4. Upon the death, incapacity, dissolution or liquidation of any of the undersigned, or any endorser, guarantor to surety hereto.

**EXHIBIT B**

FEB 28 '03 09:36                          9543404312        PAGE.01

FEB 28 03 09:13    ROY H.Sciacca                9543404312              p.2

5. Upon the filing by any of the undersigned of an assignment for the benefit of creditors, bankruptcy or other form of insolvency, or by suffering an involuntary petition in bankruptcy or receivership not vacated within thirty (30) days.

In the event this note shall be in default and placed for collection, then the undersigned agree to pay all reasonable attorney fees and costs of collection. Payments not made within five (5) days of due date shall be subject to a late charge of 5.0% of said payment. All payments hereunder shall be made to such address as may from time to time be designated by any holder.

The undersigned and all other parties to this note, whether as endorsers, guarantors or sureties, agree to remain fully bound until this note shall be fully paid and waive demand, presentment and protest and all notices hereto and further agree to remain bound, notwithstanding any extension, modification, waiver, or other indulgence or discharge or release of any obligor hereunder or exchange, substitution, or release of any collateral granted as security for this note. No modification or indulgence by any holder hereof shall be binding unless in writing; and any indulgence on any one occasion shall not be an indulgence for any other or future occasion. Any modification or change in terms, hereunder granted by any holder hereof, shall be valid and binding upon each of the undersigned, notwithstanding the acknowledgement of any of the undersigned, and each of the undersigned does hereby irrevocably grant to each of the others a power of attorney to enter into any such modification on their behalf. The rights of any holder hereof shall be cumulative and not necessarily successive. This note shall take effect as a sealed instrument and shall be construed, governed and enforced in accordance with the laws of the State of Nevada.

Witnessed:

_____    Borrower:
Witness                           Creative Licensing, Inc.

                                  By: _____, President
                                  Its: _____PRESIDENT_____

FEB 28 '03 09:37                                   9543404312         PAGE.02

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by la provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use by the Clerk of Cou of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Kelly Hartnett and Cherry Hartnett

**DEFENDANT**
Roy A. Sciacca

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Denville, NJ
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Broward
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE TH
THE TRACT OF LAND INVOLVED.

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Jeffrey T. Kucera,, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis LLP
200 S. Biscayne Blvd. – 39th Floor, Miami, FL 33131
Tel: (305) 539-3300

ATTORNEYS (IF KNOWN)

**(d) CIRCLE COUNTY WHERE ACTION AROSE:** DADE, MONROE, (BROWARD,) PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Questions (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

FTL= 08CV60555 Jordan / McAliley

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PL FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  |
|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appe Magi

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | | A TORTS | | | | FORFEITURE/PENALTY | | A BANKRUPTCY | | A OTH |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ 110 Insurance | | **PERSONAL INJURY** | | **PERSONAL INJURY** | | B☐ 610 Agriculture | | ☐ 422 Appeal 28 USC 158 | | ☐ 400 State |
| ☐ 120 Marine | ☐ 310 | Airplane | ☐ 362 | Personal Injury – Med. Malpractice | | B☐ 620 Other Food & Drug | | ☐ 423 Withdrawal 28 USC 157 | | ☐ 410 Antit |
| ☐ 130 Miller Act | ☐ 315 | Airplane Product Liability | ☐ 365 | Personal Injury – Product Liability | | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | **A PROPERTY RIGHTS** | | ☐ 430 Bank |
| ☐ 140 Negotiable Instrument | ☐ 320 | Assault, Libel & Slander | ☐ 368 | Asbestos Personal Injury Product Liability | | B☐ 630 Liquor Laws | | ☐ 820 Copyrights | | B☐ 450 Com |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 | Federal Employers' Liability | | **PERSONAL PROPERTY** | | B☐ 640 R.R. & Truck | | ☐ 830 Patent | | ☐ 460 Depo |
| ☐ 151 Medicare Act | ☐ 340 | Marine | ☒ 370 | Other Fraud | | B☐ 650 Airline Regs. | | ☐ 840 Trademark | | ☐ 470 Rack Orga |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 | Marine Product Liability | ☐ 371 | Truth in Lending | | B☐ 660 Occupational Safety/Health | | | | ☐ 810 Sele |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 | Motor Vehicle | ☐ 380 | Other Personal Property Damage | | B☐ 690 Other | | | | ☐ 850 Secu |
| ☐ 160 Stockholders' Suits | ☐ 355 | Motor Vehicle Product Liability | ☐ 385 | Property Damage Product Liability | | **A LABOR** | | **B SOCIAL SECURITY** | | ☐ 875 Cust |
| ☐ 190 Other Contract | ☐ 360 | Other Personal Injury | | | | ☐ 710 Fair labor Standards Act | | ☐ 861 HIA (1395ff) | | ☐ 891 Agric |
| ☐ 195 Contract Product Liability | | | | | | ☐ 720 Labor/Mgmt. Relations | | ☐ 862 Black Lung (923) | | ☐ 892 Econ |
| **A REAL PROPERTY** | | **A CIVIL RIGHTS** | | **PRISONER PETITIONS** | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | | ☐ 863 DIWC/DIWW (405(g)) | | ☐ 893 Envi |
| ☐ 210 Land Condemnation | ☐ 441 | Voting | B☐ 510 | Motions to Vacate Sentence | | ☐ 740 Railway Labor Act | | ☐ 864 SSID Title XVI | | ☐ 894 Ener |
| ☐ 220 Foreclosure | ☐ 442 | Employment | | **HABEAS CORPUS:** | | ☐ 790 Other Labor Litigation | | ☐ 865 RSI (405(g)) | | ☐ 895 Free |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 | Housing/ Accommodations | B☐ 530 | General | | A☐ 791 Empl. Ret. Inc. Security Act | | **FEDERAL TAX SUITS** | | ☐ 900 Appe Unde |
| ☐ 240 Torts to Land | ☐ 444 | Welfare | B☐ 535 | Death Penalty | | | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | | ☐ 950 Cons |
| ☐ 245 Tort Product Liability | ☐ 440 | Other Civil Rights | A☐ 540 | Mandamus & Other | | | | A☐ 871 IRS – Third Party 28 USC 7609 | | ☐ 890 Othe |
| ☐ 290 All Other Real Property | | | B☐ 550 | Civil Rights | | | | | | A OR B |
| | | | B☐ 555 | Prison Condition | | | | | | |

FILED by INTAKE DC
APR 18 2008
STEVEN M. LARIMORE
CLERK U.S. DIST CT
S.D. OF FLA. MIAMI

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Fraud, Negligent Misrepresentation, Breach of Contract
- Promissory Note, Alter Ego, Breach of Contract -
Sciacca Agreement

**LENGTH OF TRIAL**
  3   days estimated (or both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $200,000 plus interst
CHECK YES only if demanded in co
JURY DEMAND:

**VIII. RELATED CASE(S) IF ANY** (See Instructions)   JUDGE   DOCKET NUMBER

DATE: 4/18/08   SIGNATURE OF ATTORNEY OF RECORD

19 of 19

receipt # 978825 Amount $350.00